UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD SOTO ALVAREZ,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No.: 1:20-cv-1390 JLT<br><br>ORDER GRANTING PLAINTIFF'S REQUEST FOR JUDICIAL REVIEW (DOC. 20) AND REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF EDWARD SOTO ALVAREZ, AND AGAINST DEFENDANT, THE COMMISSIONER OF SOCIAL SECURITY |

Edward Soto Alvarez asserts he is entitled to disability benefits, a period of disability, and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating his subjective statements. (*See generally* Doc. 20.) For the reasons set forth below, the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**BACKGROUND**

In March 2017, Plaintiff applied for benefits, alleging he came disabled in January 2017 due to neck, back, and hip problems. (Doc. 10-2 at 79.) The Social Security Administration denied the applications at the initial level and upon reconsideration. (*See generally id.* at 75-137.) Plaintiff requested a hearing and testified before an ALJ on August 16, 2018. (*Id.* at 21, 38.) The ALJ found Plaintiff was not disabled and issued an order denying benefits on November 29, 2019. (*Id.* at 21-31.)

Plaintiff requested review by the Appeals Council, which denied the request on July 27, 2020. (*Id.* at 7-9.) Thus, the ALJ's determination became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

**ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The process requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after the alleged onset date of January 1, 2017. (Doc. 10-2 at 23.) Second, the ALJ found Plaintiff had "the following severe impairments: degenerative disc disease of the lumbar spine and cervical spine, internal derangement of the bilateral hips, major depressive disorder single episode, anxiety disorder verses generalized anxiety disorder." (*Id*. at 24.) At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing. (*Id.* at 24-25.) Next, the ALJ found:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can lift and carry 20 pounds occasionally and 10 pounds frequently, can stand and walk six hours and sit six hours in an eight-hour workday with normal breaks. The claimant can occasionally climb ramps and stairs, balance, stool, kneel, crouch, and crawl; can occasionally operate foot controls with the bilateral lower extremities, but cannot climb ladders, ropes, or scaffolds. The claimant should avoid concentrated exposure to extreme cold and heat, wetness/humidity, vibration, and dangerous and unprotected workplace hazards. The claimant needs to wear a back brace at work. The clamant can have no more than occasional interaction with the general public, supervisors, and coworkers. He can no more than occasionally understand, remember, and/or apply information necessary to perform complex and detailed work tasks or make judgements on complex and detailed work related job assignments or cope with the stress normally associated with semiskilled or skilled employment.

(*Id.* at 25.) With this residual functional capacity, the ALJ determined at step four that Plaintiff was "unable to perform any past relevant work." (*Id.* at 29.) However, ALJ found Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.* at 31.) Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act from January 1, 2017, through the date of the decision. (*Id.*)

3

## DISCUSSION AND ANALYSIS

Plaintiff argues the ALJ in evaluating his statements concerning the severity of his symptoms and "failed to provide a clear and convincing reason supported by substantial evidence" to reject Plaintiff's testimony. (Doc. 20 at 19, emphasis omitted.) On the other hand, the Commissioner asserts that "[t]he ALJ's reasoning in discounting Plaintiff's subjective symptom testimony was consistent with a reasonable interpretation of the record and controlling legal authority." (Doc. 21 at 8.) Therefore, the Commissioner asserts the Court should affirm the final decision. (*Id.* at 9.)

### A.   Plaintiff's subjective statements

Plaintiff testified that he was "messed up" in his neck, middle spine, and lower back. (*Id.* at 45.) He said he had a bone "sticking out" in his spine, without penetrating the skin, which caused pain and muscle spasms. (*Id.* at 44-45.) Plaintiff reported the pain radiated, and he had numbness in his hands and "a little tingling on [his] feet." (*Id.* at 44-45, 58-59.) He said he wore a back brace, though he forgot it the day of the hearing. (*Id.* at 67.)

Plaintiff said he also had problems with both hips, and explained they popped as he walked. (Doc. 10-2 at 40.) Plaintiff reported he was not sure if his hips were out of place, but he would "hear a bone out" as he walked. (*Id.* at 46.) He testified that doctors indicated he "may need surgery in the future" for his hips. (*Id.*) Plaintiff reported he was "scared to get surgery" and was unsure if he would have it—such as a total hip replacement—if the opportunity arose, because his mother had metal in a hip and it bothered her. (*Id.* at 47-48, 69.)

Plaintiff believed he could no longer perform the work because he "can't even get up and … take a little walk to clear [his] mind." (Doc. 10-2 at 48.) He explained that he "used to take … walks in the morning to clear [his] mind" so he "didn't feel too depressed." (*Id.* at 42.) He testified that he had been diagnosed with major depressive disorder and anxiety disorder, or generalized anxiety. (*Id.* at 41.) He said he took sertraline for depression, which helped him to feel better. (*Id.* at 52-53.) Plaintiff reported the dosage had doubled; he previously took one dose but was taking two by the time of the hearing. (*Id.*) He stated that he saw psychiatrist with one-on-one psychotherapy, but stopped when his insurance stopped paying for it. (*Id.*) Plaintiff believed the therapy was not beneficial because he attributed his depression to his pain, and the "pain was still going to be there." (*Id.* at 53-54.) He

explained that two years before, he "was able to … do barbeques and wash [his] car" but could no longer do these activities due to his pain. (*Id.* at 54.)

Plaintiff said he also no longer performed household chores, such as laundry, sweeping, vacuuming, or dusting. (Doc. 10-2 at 58, 60-61.) Plaintiff reported that he hardly left the house, and though he continued to go to church on Sundays, he would have to get up during the service. (*Id.* at 58-59.) He stated that he did not have to leave to visit family members, as they would "usually just come to the house." (*Id.* at 60.) Plaintiff said he had a few friends who would "come buy and pick [him] up" because they did not want him stuck at home all the time. (*Id.* at 65.)

Plaintiff estimated he could sit "15/20 minutes," and "[n]o more than 30 minutes tops" before he needed to stand. (Doc. 10-2 at 57.) Plaintiff would stand for "maybe 15/20 minutes" before he needed to sit back down, depending on his level of pain. (*Id.*) He said he would "have to probably push" to walk the length of a football field. (*Id.* at 48.) Plaintiff agreed that it was "fair to say that throughout the day [he's] kind of rotating from sitting, standing, lying down." (*Id.* at 57) Plaintiff said he spent a lot of time lying in a recliner that vibrated and applied heat to his back. (*Id.* at 66.) He reported that he would have to look into whether his insurance would cover an MRI. (Doc. 10-2 at 69.) Plaintiff explained he was "in debt right now with some of the doctors." (*Id.*)

**B.     Standards for reviewing a claimant's statements**

In evaluating a claimant's statements regarding the severity of his symptoms, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if there is no evidence of malingering, the ALJ must make specific findings as to credibility by setting forth clear and convincing reasons for rejecting his subjective complaints. *Id.* at 1036.

If there is objective medical evidence of an impairment, an ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because it is unsupported by objective medical evidence. *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991). The Ninth Circuit explained:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce"

pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

*Smolen v. Chater* 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in *Cotton*, 799 F.2d 1403). Further, an ALJ is directed to identify "specific reasons for the weight given to the individual's symptoms," in a manner "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." *Moisa v. Barnhart,* 367 F.3d 882, 885 (9th Cir. 2004).

An ALJ may consider many factors to assess a claimant's statements including, for example: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct, (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment, and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of reported by a claimant. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (an ALJ may consider a claimant's reputation for truthfulness, inconsistencies between a claimant's testimony and conduct, and a claimant's daily activities).

### C.     The ALJ's Analysis

The ALJ summarized Plaintiff's testimony at the hearing, and determined "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Doc. 10-2 at 26.) However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record..." (*Id.*) Following this finding, the ALJ stated:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because although the claimant alleges a worsening of his symptoms in the last year, the record indicates only two visits to his provider in 2018 and one visit to his provider in March 2019 (Exhibits 7F). In addition, despite the worsening, his provider has not prescribed more than muscle relaxer and NSAIDs (Exhibit 7F, p. 4). The claimant testified that he is covered by MediCal insurance; however, he has yet to see a pain management provider due to alleged insurance issues (Exhibit 7F, p. 12).
>
> Treatment records indicate the claimant sought treatment for neck and back pain beginning in March 2017 (Exhibit 2F, p. 3). The claimant reported that he had a history of injury as a child, but had experienced more pain in the last seven to eight years (Exhibit 2F, p. 3). He exhibited tenderness in his back, but full range of motion, negative straight leg raises, normal gait and strength, intact sensation, and normal

6

reflexes (Exhibit 2F, pp. 1, 4). His provider prescribed naproxen and cyclobenzaprine and referred him to physical therapy (Exhibit 2F, pp. 2, 5). The claimant participated in physical therapy without improvement in his symptoms (Exhibit 3F). He reported increased symptoms with lifting over 25 pounds, walking more than one mile, climbing, and poor posture (Exhibit 3F, p. 5). There were no strength deficits, he had a feeling of his spine wanting to pop with active lumbar flexion, and he presented with guarding with hip movement (Exhibit 3F, pp. 7, 34, 35).

In August 2017, the claimant complained of neck, low back, and hip pain with a sensation of needles and spasms in the neck (Exhibit 4F, p. 3). His back was tender to palpation with limited range of motion, his gait was not antalgic, and he was able to complete flexion of the hip with tenderness at the extremes and at the great trochanter (Exhibit 4F, p. 4). Later in the month, he returned to his provider with complaints of severe depression and was started on sertraline (Exhibit 4F, p. 6).

In September 2017, the claimant was seen for initial treatment of mental symptoms (Exhibit 5F, p. 1). His mental status was fairly normal, except it was noted that he appeared distracted and anxiety interfered with his concentration (Exhibit 5F, p. 1). It does not appear that he returned to this provider for further treatment.

In October 2017, the claimant reported improved depression, but he was still down and anxious (Exhibit 7F, p. 21). His sertraline dosage was increased to 100 mg a day and he was prescribed ibuprofen in addition to cyclobenzaprine (Exhibit 7F, p. 24). In November 2017, he returned to his provider complaining that his depression had returned (Exhibit 7F, p. 17). He had tenderness to palpation of the neck and back, he kept his head in an erect position and limited rotation, and his lumbar spine range of motion was limited to 40 degrees with flexion and 10 degrees with extension (Exhibit 7F, p. 18). His mental status was normal, except he was tearful at times (Exhibit 7F, pp. 15, 19, 24). His sertraline was increased to 150 mg at that time (Exhibit 7F, p. 19). At his next appointment in December 2017, he reported that he had not increased his sertraline dosage (Exhibit 7F, p. 14). He told his provider that he was planning to do a side job, but he was worried about his chronic pain (Exhibit 7F, p. 14). He was referred for pain management and he was prescribed meloxicam (Exhibit 7F, p. 14). He returned in March 2018 for a refill on meloxicam and an increase in his dosage of sertraline (Exhibit 7F, pp. 10-12). He reported that he was down and having anxiety attacks, and he was working on resolving insurance issues to begin pain management (Exhibit 7f, pp. 10, 12). In November 2018, he reported that his anxiety and depression were controlled with sertraline 200 mg a day (Exhibit 7F, p. 6). He was next seen by his providers in March 2019, reporting neck pain for one month with popping when he moved and moderate depression (Exhibit 7f, p. 2). He said he was better able to cope with things, and he had normal mental status (Exhibit 7F, pp. 2, 4, 7). His sertraline dosage was continued, and he was started on baclofen in addition to meloxicam (Exhibit 7F, p. 4).

X-rays of the thoracic spine in March 2017 showed mild degenerative disc changes without acute fracture (Exhibit 1F, p. 1). X-rays of the cervical spine showed severe degenerative cervical spondylosis, including subtle retrolisthesis of C3 on C4 (Exhibit 1F, p. 2). X-rays of the lumbar spine showed severe spondylolisthesis at L5-S1 level likely related to underlying pars defect (Exhibit 1F, p. 3). X-rays of the left hip in September 2017 indicated a small area of mixed central lucency and circumferential radiodensity over the femoral neck and could not exclude the possibility of an osteoid osteoma versus a superimposed calcification from the soft tissues (Exhibit 4F, p. 13).

(Doc. 11-2 at 26-28.)  The ALJ then summarized the medical opinions in the record.  (*See id.* at 28-29.)

Plaintiff argues the ALJ erred in evaluating his testimony in this manner, and rejecting his statements based upon "gaps in treatment and the conservative nature of treatment." (Doc. 20 at 19-22.) According to Plaintiff, these reasons are not "clear and convincing reasons supported by substantial evidence." (*Id.* at 22.) The Commissioner argues the ALJ properly considered "benign objective medical evidence, and conservative and inconsistent treatment," which "were legally valid and factually supported reasons" to reject Plaintiff's testimony. (Doc. 21 at 9)

### 1. Objective medical evidence

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can be "specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). While a claimant's "testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider").

Importantly, if an ALJ cites the medical evidence to support an adverse credibility determination, it is not sufficient for the ALJ to simply state the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Rather, an ALJ must "specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (the ALJ has a burden to "identify what testimony is not credible and what evidence undermines the claimant's complaints"); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ must identify "what evidence suggests the complaints are not credible").

The Ninth Circuit explained that "summariz[ing] the medical evidence supporting [the] RFC determination ... is not the sort of explanation or the kind of 'specific reasons' [the Court] must have in order to ... ensure that the claimant's testimony was not arbitrarily discredited." *See, e.g., Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). As a result, "the observations an ALJ makes as part of the summary of the medical record are not sufficient to establish clear and convincing reasons

for rejecting a Plaintiff's credibility." *Argueta v. Colvin*, 2016 WL 4138577 at *13 (E.D. Cal. Aug. 3, 2016). For example, in *Brown-Hunter*, the claimant argued the ALJ failed to provide clear and convincing reasons for rejecting her symptom testimony. *Id.*, 806 F. 3d at 491. The district court identified inconsistencies in the ALJ's summary of the medical record that it gave rise to reasonable inferences about Plaintiff's credibility. *Id.* On appeal, the Ninth Circuit determined the ALJ failed to identify the testimony she found not credible, and did not link that testimony to support the adverse credibility determination. *Id.* at 493. The Court explained that even if the district court's analysis was sound, the analysis could not cure the ALJ's failure. *Id.* at 494.

Again, in *Holcomb v. Saul,* the Ninth Circuit determined an ALJ erred when discrediting symptom testimony as "not entirely consistent with the medical evidence," without linking the testimony and medical evidence. *Id.*, 832 Fed. App'x. 505, 506 (9th Cir. Dec. 28, 2020). The Court noted the ALJ summarized the claimant's testimony and "determined that his symptom testimony was not 'entirely consistent with the medical evidence and other evidence in the record.'" *Id.* at 506. The Court observed that "the ALJ discussed relevant medical evidence but failed to Holcomb's symptom testimony to specific medical records and explain why those medical records contradicted his symptom testimony." *Id.* Further, the Court observed that "the ALJ never mentioned Holcomb's symptom testimony while discussing the relevant medical evidence." *Id.* Because the Court is constrained to the reviewing reasoning identified by the ALJ for discounting testimony, the Court found the "failure to specific the reasons for discrediting Holcomb's symptom testimony was reversible error." *Id*. (citing *Brown-Hunter*, 806 F.3d at 494).

Likewise, here, the ALJ offered little more than a summary of the medical evidence to support the rejection Plaintiff's subjective statements. The ALJ summarized the treatment records from March 2017 through March 2019, noting complaints of pain, depression, and anxiety. (Doc. 11-2 at 26-27.) In addition, the ALJ noted Plaintiff had x-rays on his spine, which the ALJ acknowledged showed "severe cervical spondylosis, including subtle retrolisthesis," and "severe spondylolisthesis" at the L5-SI level. (*Id* at 27.) However, the ALJ did not link any objective findings in the treatment notes or the x-rays to Plaintiff's testimony. The ALJ did not identify any evidence that he believed was inconsistent with Plaintiff's testimony that he needed to alternate positions throughout the day and could sit "[n]o

more than 30 minutes" before he needed to stand. (*See id.* at 27, 57.) The ALJ also did not identify objective medical evidence that undermined or contradicted Plaintiff's statements concerning difficulty walking. (*See id.* at 27, 48.) Therefore, the ALJ's summary of the medical record does not support the decision to reject Plaintiff's subjective statements. *See Brown-Hunter*, 806 F.3d at 494; *see also Coloma v. Comm'r of Soc. Sec.*, 2018 WL 5794517 at *9 (E.D. Cal. Nov. 2, 2018) (finding error where "the ALJ simply cite[d] to medical evidence and the general adequacy of Plaintiff's functioning, without any link to how they conflict with, or undermine, Plaintiff's statements").

### 2. Treatment provided

In evaluating a claimant's statements, the ALJ may consider "the type, dosage, effectiveness, and side effects of any medication." 20 C.F.R. §§ 404.1529(c), 416.929(c). The treatment a claimant received, especially when conservative, is a legitimate consideration in a credibility finding. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("Evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"). Importantly, however, "the fact that treatment may be routine or conservative is not a basis for finding subjective symptom testimony unreliable absent discussion of the additional, more aggressive treatment options the ALJ believes are available." *Block v. Berryhill*, 2018 WL 1567814 at *5 (E.D. Cal. Mar. 31, 2018), quoting *Moon v. Colvin*, 139 F. Supp. 3d 1211, 1220 (D. Or. 2015).

The ALJ observed that Plaintiff's "provider has not prescribed more than muscle relaxer and NSAIDs." (Doc. 10-2 at 26.) As the ALJ implicates, such treatment has been characterized as "conservative" in nature, and may support the decision to reject a claimant's subjective statements. *See, e.g., Elzig v. Berryhill*, 2019 WL 2024953 at *12 (E.D. Cal. May 8, 2019) (finding treatment including NSAIDs, a TENS unit and heat to be "conservative treatment"). However, the ALJ did not identify any more aggressive treatment options that he believed were available for treating Plaintiff's impairments, such as the "severe degenerative cervical spondylosis" and "severe spondylolisthesis at [the] L5-S1 level" in Plaintiff's spine. (Doc. 10-2 at 26.) Although the Commissioner suggests that "treatment providers could have tried a range of treatments considering his reports of significant pain such as nonopioid analgesics, opioid analgesics, or injections" (Doc. 21 at 8), such treatment options were not identified by the ALJ in his opinion, and the Court is constrained to the reasoning stated by the

ALJ. *See Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003) (noting a reviewing court is "constrained to review the reasons the ALJ asserts").

Because the ALJ did not identify what more aggressive treatment that he believed to be appropriate for Plaintiff's conditions, the conservative care Plaintiff received cannot support an adverse credibility determination. *See Moon*, 139 F.Supp.3d at 1200; *see also Block*, 2018 WL 1567814 at *5; *A.H. v. Comm'r of Soc. Sec.*, 2020 WL 5443243, at *8 (N.D. Cal. Sept. 10, 2020) (ALJ erred in discounting testimony due to conservative treatment because the ALJ did not cite medical records indicating "more aggressive treatment options").

### 3.     Failure to seek treatment

The Ninth Circuit determined a claimant's "failure to seek treatment" supports an adverse credibility determination. *Fair*, 885 F.2d at 603. Similarly, an ALJ may determine a claimant's statements are "less credible if the level or frequency of treatment is inconsistent with the level of complaints." SSR 96-7p, 1996 SSR LEXIS 4, at *21.[1] Thus, gaps in treatment may suggest a lower level of pain and functional limitations than a claimant alleges. *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995); *see also Fair*, 885 F.2d at 603 ("unexplained, or inadequately explained, failure to seek treatment … can cast doubt on the sincerity of the claimant's pain testimony"). When rejecting testimony for failure to seek treatment, an ALJ "must not draw inferences about an individual's symptoms and their functional effects … without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek treatment." SSR 96-7p, 1996 SSR LEXIS 4, at *22. For example, the Ninth Circuit held that gaps in treatment do not constitute a clear and convincing reason for discounting credibility if the claimant lacked the financial ability to pay for treatment. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

The ALJ opined Plaintiff's statements were inconsistent with the record because "the record indicates only two visits to his provider in 2018 and one visit to his provider in March 2019." (Doc. 10-

---

[1] Social Security Rulings are issued by the Commissioner to clarify regulations and policies. Though they do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

2 at 26, citing Exh. 7F [Doc. 10-2 at 425- 459].)  Furthermore, the ALJ observed that Plaintiff "testified that he is covered by MediCal insurance; however, he has yet to see a pain management provider due to alleged insurance issues." (*Id.,* citing Exh. 7F, p. 12 [Doc. 10-2 at 434].).

Plaintiff contends the ALJ erred in addressing his lack of treatment, because "there is abundant evidence in the record of Mr. Alvarez's financial instability which provides justification for any lapses in treatment." (Doc. 20 at 20.)  For example, Plaintiff observes: "Physical therapy records from August 2017 indicate that Mr. Alvarez was unable to make a co-pay payment. [Citation] Mr. Alvarez reported to his primary care provider on August 22, 2017 that he was falling behind on paying his bills." (*Id.*, citing AR 342, 385 [Doc. 10-2 at 346, 389].)  In addition, Plaintiff notes that he "was unable to pick up his prescriptions" and testified that he was in debt to his physicians. (*Id.*, citing AR 65, 434 [Doc. 10-2 at 69, 438].)

The Commissioner asserts that "[t]he ALJ acknowledged Plaintiff's reported issues with insurance, but Plaintiff had insurance during large portions of 2017-2019." (Doc. 21 at 8, citing e.g., AR 383 (Blue Cross of California), 422 (Molina Healthcare), 426 (MediCal), 434 (Blue Cross of California).)  The Commissioner contends also, "Although Plaintiff argues that he could not see a pain specialist because of insurance issues…, he still did not seek treatment from a pain specialist after subsequently obtaining insurance." (*Id.*)  Therefore, the Commissioner asserts "the ALJ's discussion of Plaintiff's treatment history bolstered the reasonableness of the decision to discount his subjective allegations of disability." (*Id.*)

Notably, though the ALJ criticized Plaintiff for "only two visits to his provider in 2018," the record indicates Plaintiff did not have insurance for a portion of the year and was required to "Self Pay" for the visit in March 2018. (*See* Doc. 10-2 at 434.)  Because the ALJ did not consider whether the failure to seek treatment in 2018 was due lack of coverage and Plaintiff's inability to afford visits, the identified gaps in treatment cannot support the adverse credibility determination. *See* SSR 96-7p, 1996 SSR LEXIS 4, at *22; *Orn*, 495 F.3d at 638; *see also McMillen v. Berryhill*, 2018 WL 3769829, at *19 (E.D. Cal. Aug. 7, 2018) ("the ALJ erred by questioning Plaintiff's credibility where Plaintiff did not seek medical treatment because of his lack of insurance").  On the other hand, the failure to see a pain

management specialist after Plaintiff obtained coverage with MediCal, particularly with a long delay after coverage, may support an adverse credibility determination.

### 4. Failure to identify the testimony being rejected

The ALJ must identify what testimony from a claimant is not credible. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). "General findings" regarding credibility, such as the ALJ provided here, "are insufficient." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (citations omitted). The Ninth Circuit requires an ALJ to "*specifically identify what testimony is credible* and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (emphasis added); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ "must state which pain testimony is not credible and what evidence suggests the complaints are not credible"); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (the ALJ must "specifically identify[] what testimony is not credible and what evidence undermines the claimant's complaints"). Because the ALJ did not meet this burden to identify specific statements rejected or the evidence undermining the limitations to which Plaintiff testified, the ALJ failed to properly set forth findings "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Thomas*, 278 F.3d at 958.

## D.    Remand is Appropriate

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v*, 80 F.3d at 1292. In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v.*

13

*Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).  The Ninth Circuit also explained that "where the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited," the testimony may be credited as true, and remand is not appropriate. *Lester,* 81 F.3d at 834*; Smolen,* 80 F.3d at 1292.

However, courts retain flexibility in crediting testimony as true.  *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there were insufficient findings as to whether the plaintiff's testimony should be credited as true).  A remand for further proceedings regarding the credibility of a claimant is an appropriate remedy.  *See, e.g., Bunnell*, 947 F.2d at 348 (affirming a remand for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the claimant's] subjective complaints…").  Accordingly, remand is appropriate for the ALJ to provide sufficient findings concerning Plaintiff's subjective complaints and the limitations Plaintiff identified in his testimony.

## CONCLUSION AND ORDER

For the reasons set for above, the Court finds the ALJ erred in evaluating the record and Plaintiff's subjective complaints, and the ALJ's decision cannot be upheld.  *See Sanchez*, 812 F.2d at 510.  Accordingly, the Court **ORDERS**:

1. Plaintiff's request for review of the ALJ's decision (Doc. 20) is **GRANTED**;
2. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
3. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Edward Alvarez and against Defendant, the Commissioner of Social Security.

IT IS SO ORDERED.

Dated: __**December 20, 2021**__          _____ **/s/ Jennifer L. Thurston**
                                                                CHIEF UNITED STATES MAGISTRATE JUDGE